UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

RALPH ABREU, : 
        Plaintiff, :
 :
v. : No. 5:23-cv-1092
 :
SAM V. NAPOLEAN[1] and JOHN DOE #1, :
        Defendants. :
_____

**O P I N I O N**
**Motion to Dismiss, ECF No. 12 - Granted**

**Joseph F. Leeson, Jr.**                                                                             **November 14, 2023**
**United States District Judge**

**I.    INTRODUCTION**

Plaintiff Ralph Abreu, through counsel, initiated the above-captioned action regarding an alleged assault while incarcerated at State Correctional Institution ("SCI") Greene. After screening the complaint, which contained very few factual allegations, this Court dismissed the complaint for failure to state a claim but granted leave to amend. An Amended Complaint was filed against Defendant Sam V. Napoleon, who has moved to dismiss and to transfer venue. For the reasons set forth below, the Amended Complaint is dismissed with prejudice against all Defendants for failure to state a claim and the case is closed.

**II.    BACKGROUND**

On March 20, 2023, Abreu, through counsel, filed a Complaint, which although citing 42 U.S.C. § 1983 pled only state law claims. *See* Compl., ECF No. 1. These claims were against fifteen (15) defendants, including a John Doe Napoleon, for an alleged beating on or about

---

[1]        The Defendant's last name is correctly spelled "Napoleon."

March 28, 2021, after Abreu, an inmate, was removed from a restraint chair and placed on the cell floor at SCI-Greene.

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915A, this Court screened the Complaint. *See* Opn., ECF No. 3 (dated April 4, 2023). The Complaint, whose factual allegations were limited to a few numbered paragraphs, was found to be "woefully deficient to state a claim for relief." *See id.* 10-11, 18. The claim pursuant to 42 U.S.C. § 1983 specifically was deficient for six reasons: (1) the Complaint, which did not distinguish between the acts of each defendant, failed to allege any defendant's personal involvement; (2) the Complaint improperly relied on the theory of respondeat superior; (3) as to the correctional institution defendants, neither was a "person" amenable to suit under § 1983; (4) the official capacity claims were barred by Eleventh Amendment immunity; (5) the Complaint failed to allege the violation of any particular constitutional right; and (6) to the extent the allegations could be liberally construed[2] as alleging an excessive force claim under the Eighth Amendment,[3] the Complaint failed to identify which defendants allegedly "inflicted a beating" on Abreu. *See id.* 11-14. The institutional defendants and the official capacity claims against the individual defendants were dismissed with prejudice, while the remaining claims were dismissed without prejudice and with leave to amend. *See generally* Opn. and Order, ECF No. 4.

---

[2] This Court explained that because the Complaint was filed by counsel, it had no obligation to liberally construe the pleadings but nevertheless applied a liberal construction for purposes of the Opinion. *See* Opn. 13 n.3 (citing *Higgs v. AG of the United States*, 655 F.3d 333, 339 (3d Cir. 2011)).

[3] The Opinion also discussed the deficiencies of an Eighth Amendment claim under the failure to protect and failure to supervise/train theory but because the Amended Complaint alleges only excessive force, those deficiencies are not included herein. *See* Opn. 13-14. Similarly, the inadequacies of a conspiracy claim are not repeated herein because they are not alleged in the Amended Complaint. *See id.* 14-16.

Abreu filed an Amended Complaint on April 24, 2023, asserting one count for "Federal Civil Rights Violations (Excessive Force)" against Defendant Sam V. Napoleon and John Doe #1.  *See* Am. Compl., ECF No. 5.  Both Defendants are alleged to have, on or about March 28, 2021, "improperly and without cause and justification restrained Plaintiff in a restraint chair from which he was eventually removed and placed on the I-B-7 cell floor."  *Id.* ¶ 9.  The Amended Complaint further alleges that "[a]t the aforesaid time and place, Defendant John Doe #1 violently, horrifically, repeatedly and ruthlessly placed a knee on the face of the Plaintiff and, therefore, repeatedly continued to punch Plaintiff in the face at the instruction, condoning, insistence and/or acquiescence of Defendant Napolean [sic], all without cause or justification."  *Id.* ¶ 10.  Abreu alleges that Napoleon acted "by and through his agent . . . John Doe #1, to whom he is vicariously liable in condoning, authorizing, directing, and promoting repeated abuse by Defendant John Doe # 1[] upon Plaintiff without cause and justification. . . ."  *Id.* ¶ 12.  Defendants are alleged to have deprived Abreu of his "rights secured by the Fourth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983" and "of his liberty."  *Id.* ¶ 14.

Napoleon has filed a Motion to Dismiss Plaintiff's Amended Complaint and Transfer Venue.  Mot., ECF No. 12.  In moving to dismiss, Napoleon argues that the Amended Complaint fails to allege his personal involvement and that he cannot be vicariously liable for the actions of John Doe #1.  *See id.* 4-6.  If any claims survive dismissal, Napoleon moves to transfer venue to the United States District Court for the Western District of Pennsylvania.  *See* Mot. 3-4.  The Western District of Pennsylvania encompasses the City of Waynesburg, Greene County, which is where SCI Greene is located, which is where the events at issue in the Amended Complaint occurred.  *See id.*  Accordingly, because the Western District of Pennsylvania is the "judicial

district in which a substantial part of the events or omissions giving rise to the claim occurred," *see* 28 U.S.C. § 1391(b)(2), Napoleon asserts that the action should be transferred to the United States District Court for the Western District of Pennsylvania.  *See id.*

In opposition to the Motion, Abreu does not contest that SCI- Greene is in the Western District of Pennsylvania but suggests, for the first time,[4] that because he lived in the Eastern District of Pennsylvania "[p]rior to being placed in the custody of the Defendants" venue is proper in this District.  *See* Opp. 4-7,[5] ECF No. 14.  He further suggests, without any factual support, that discovery will likely reveal a "breadth of abuse, excessive force and custodial mistreatment claims . . . involving prisoners in the custody of the Defendants whom resided in the Eastern District of Pennsylvania prior to being sentenced and transferred to the Defendants' custody."  *Id.* 6-7.  Similarly, Abreu suspects discovery will support his excessive force claim and, therefore, opposes the motion to dismiss.  *See id.* 9-11.

## III. LEGAL STANDARDS

### A. Motion to Dismiss or Transfer Venue – Review of Applicable Law

"In considering a motion to dismiss for improper venue under Rule 12(b)(3), the Court must generally accept as true the allegations in the Complaint, unless contradicted by Defendants' affidavits."  *Joe Hand Promotions, Inc. v. Shehadeh*, No. 18-4119, 2019 U.S. Dist. LEXIS 79206, at *4 (E.D. Pa. May 10, 2019).  "Because improper venue is an affirmative

---

[4]  Contrary to the argument in Abreu's opposition brief, the Amended Complaint alleges, as did the original Complaint, that venue is proper where "Plaintiff was injured in the City of Waynesburg, Pennsylvania, and County of Greene."  Compl. ¶ 3; Am. Compl. ¶ 7.  Counsel just mistakenly placed these geographic locations in the Eastern District of Pennsylvania.

[5]  There are no page numbers in the brief in opposition; therefore, this Court uses the pagination assigned by the electronic filing system ("ECF").

defense, the burden of proving lack of proper venue remains—at all times—with the defendant." *Great W. Mining & Mineral Co. v. ADR Options, Inc.*, 434 F. App'x 83, 86 (3d Cir. 2011).

As an alternative to dismissal, a court may transfer venue pursuant to 28 U.S.C. § 1404(a). Section 1404 provides for transfers of venue "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Transfer is in "the discretion of the court." 28 U.S.C. § 1404(b); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981) (holding that "where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference"). "The burden of establishing the need for transfer ... rests with the movant." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995). The court should consider the following factors:

> (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) "convenience of the parties as indicated by their relative physical and financial conditions"; (5) "the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the for a"; (6) the location of books and records; (7) the enforceability of the judgment; (8) practical considerations that could expedite or simplify trial; (9) the level of court congestion in the two fora; (10) "the local interest in deciding local controversies at home"; (11) the public policies of the fora; and (12) in a diversity case, the familiarity of the two courts with state law.

*In re Amendt*, 169 F. App'x 93, 96 (3d Cir. 2006) (quoting *Id.*). The first six factors relate to private interests, while the remaining six pertain to the public interest. *Jumara*, 55 F.3d at 879.

### B. Motion to Dismiss under Rule 12(b)(6) – Review of Applicable Law

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if

"the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "[I]n light of *Twombly*, Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 555 n.3). *See also* Fed. R. Civ. P. 8(a) (requiring the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief").

The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). In deciding whether this burden has been met, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). *See also Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint,

matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that "a document integral to or explicitly relied upon in the complaint may be considered" (internal quotations omitted)).

  C. **Section 1983 claims – Review of Applicable Law**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The first step for the court analyzing a claim under § 1983 "is to identify the exact contours of the underlying right said to have been violated." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998). The court must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *See Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Id.*). Section "1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted). The court must also determine whether a defendant is acting under color of state law, i.e., whether the defendant is a state actor, which depends on whether there is "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). Additionally, a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual

knowledge and acquiescence, however, must be made with appropriate particularity." *Id.* "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. A supervisory defendant may be liable under 42 U.S.C. § 1983 if the defendant, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the plaintiff's] constitutional harm." *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989).

**D.     Excessive force claims – Review of Applicable Law**

Excessive force claims brought by convicted prisoners are analyzed under the Eighth Amendment's Cruel and Unusual Punishment Clause, while claims brought by pretrial detainees are analyzed under the Fourteenth Amendment's Due Process Clause.[6] *See Kingsley v. Hendrickson*, 576 U.S. 389, 400-01 (2015). The distinction is significant because the "language of the two Clauses differs, and the nature of the claims often differs." *Id.* at 400. When a prison official stands accused of using excessive force in violation of the Eighth Amendment, the question[7] is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). The malicious-and-sadistic standard for an Eighth Amendment claim is subjective, but an

---

[6]     *See also Jacobs v. Cumberland Cty.*, 8 F.4th 187, 193 (3d Cir. 2021) ("The Fourth Amendment protects citizens from objectively unreasonable uses of force in the context of arrests, investigatory stops, or any other seizure." (citing Graham v. Connor, 490 U.S. 386, 395-97 (1989)).

[7]     In answering this question, courts consider: (1) "the need for the application of force," (2) "the relationship between the need and the amount of force that was used," (3) "the extent of injury inflicted," (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them," and (5) "any efforts made to temper the severity of a forceful response." *See Whitley v. Albers*, 475 U.S. 312, 321 (1986).

objective standard is applied to a Fourteenth Amendment claim.  *See Kingsley*, 576 U.S. at 400 (explaining that the reason for the lesser standard in a Fourteenth Amendment claim is that "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically'"); *Jacobs v. Cumberland Cty.*, 8 F.4th 187, 194 (3d Cir. 2021).  To state a Fourteenth Amendment claim, a plaintiff "must show only that the force purposely or knowingly used against him was objectively unreasonable."  *See Kingsley*, 576 U.S. at 396-97.

The reasonableness standard is also in evaluating whether an officer used excessive force under Pennsylvania law.  *See Lopez v. City of Lancaster*, No. 19-5104-KSM, 2021 U.S. Dist. LEXIS 148599, at *22 (E.D. Pa. Aug. 9, 2021).  Under Pennsylvania law, a claim for excessive force by an officer is a claim for assault and battery.  *See Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 870 (E.D. Pa. 2000).  "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person."  *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (internal quotations omitted).  Corrections officers and police officers may use necessary force in the performance of their duties.  *See id.*; *Regassa v. Brininger*, No. 20-2642, 2021 U.S. App. LEXIS 30358, at *3 (3d Cir. Oct. 12, 2021).  It is the reasonableness of such force used that determines whether the officer's conduct constitutes an assault and battery.  *See Renk*, 641 A.2d at 293.

**IV.    ANALYSIS**

Initially, pursuant to this Court's Opinion and Order dated April 4, 2023, dismissing all official capacity claims with prejudice as barred by the Eleventh Amendment, the official-capacity claims re-pled in the Amended Complaint are dismissed.  *See* Opn. 12-14.  As to the

individual capacity claims for excessive force, discussed below, they are dismissed for failure to state a claim.

In determining the proper standard to apply to the claims, this Court observes that neither the Complaint nor the Amended Complaint allege whether Abreu was a convicted prisoner or a pretrial detainee at the time of the events giving rise to the instant action.  However, because he was incarcerated in a state correctional institution, as opposed to a county correctional institution, a reasonable inference is that he was a convicted prisoner.  Making that inference and because the original Complaint failed to allege the violation of any particular constitutional right, this Court liberally construed the allegations as attempting to assert an Eighth Amendment violation.  *See* Opn. 13.  The Amended Complaint, however, alleges that Abreu's Fourth and Fourteenth Amendment rights were violated.[8]  *See* Am. Compl. ¶ 14.  The Fourth Amendment, which applies to excessive force claims during the course of an arrest, has no application to the facts of this case because Abreu was incarcerated at the time of the alleged use of force. Whether counsel also erred in citing the Fourteenth Amendment as the applicable source of rights is unknown from the allegations of the Amended Complaint.  Accordingly, in order to determine whether the Fourteenth or Eighth Amendment applies, which is based on Abreu's incarceration status, this Court conducted a review of the publicly available dockets.  *See Brown v. CEC*, No. 16-4640, 2020 U.S. Dist. LEXIS 128144, at *1 n.1 (E.D. Pa. July 21, 2020) (taking judicial notice of the plaintiff's publicly available docket sheet to determine his prisoner status

---

[8]     The Amended Complaint further alleges that Napoleon's actions deprived Abreu of his rights "guaranteed by the laws and constitutions of the . . . Commonwealth of Pennsylvania," but does not identify any specific state constitutional violation or tort.  *See* Am. Compl. ¶ 16.  Given this failure, especially when combined with the name of the single count: "*Federal* Civil Rights Violations (Excessive Force)," *see id.* page 3, and the repeated citations to 42 U.S.C. § 1983, which is a "method for vindicating *federal* rights," *see Graham*, 490 U.S. at 393-94 (emphasis added), this Court finds the Amended Complaint fails to state a claim under Pennsylvania law.

during the events set forth in the complaint (citing https://ujsportal.pacourts.us/DocketSheets)). The criminal docket sheet at number CP-39-CR-0004281-2013 from the Court of Common Pleas of Lehigh County shows that Abreu was a convicted prisoner at the time of the events in the instant action.  *See* https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-39-CR-0003956-2014&dnh=GCoI80J5iHZm0fY4VogBzQ%3D%3D (last accessed Nov. 13, 2023). Judicial notice is taken of this docket.  *See Brown*, 2020 U.S. Dist. LEXIS 128144, at *1 n.1; *Hightower v. City of Phila.*, No. 21-4075-KSM, 2022 U.S. Dist. LEXIS 68905, at *4 n.4 (E.D. Pa. Apr. 14, 2022) (taking judicial notice, upon of consideration of a motion to dismiss, of the plaintiff's criminal docket, which was a matter of public record, to determine whether he was a pretrial detainee at the time of the alleged attack in the correctional facility).  The Eighth Amendment's malicious-and-sadistic standard therefore applies to Abreu's claim.

As this claim relates to Napoleon, the Amended Complaint merely alleges that "Defendants improperly and without cause and justification restrained Plaintiff in a restraint chair from which he was eventually removed and placed on the I-B-7 cell floor."  *See* Am. Compl. ¶ 9.  The Amended Complaint includes no factual allegations to show how the use of restraint chair was improper, how long Abreu was in the restraint chair, or whether Abreu suffered any pain in or was subjected to any risk of harm by being in the restraint chair.  The allegations are therefore insufficient to support, or even suggest, that Napoleon had a malicious or sadistic state of mind.  *See Bomar v. Braunlich*, No. 2:17-CV-01035-NBF, 2021 U.S. Dist. LEXIS 156779, at *24 (W.D. Pa. Aug. 19, 2021) (dismissing the excessive force claim based on use of a restraint chair because the plaintiff, even though already cuffed and shackled when placed in the restraint chair, failed to allege any facts that would support a finding that any defendant had a malicious or sadistic state of mind).  State of mind need not be pled if "the risk

of harm is obvious," *see Hope v. Pelzer*, 536 U.S. 730, 738 (2002), but the allegations in the Amended Complaint are a far cry from the level of cruelty the Eighth Amendment is intended to prohibit, *see Washington v. Ondrejka*, 822 F. App'x 104, 107-08 (3d Cir. 2020) (concluding that placement in a restraint chair for a total of five hours did not rise to the level of a constitutional violation).

Although there are additional allegations in the Amended Complaint regarding the use of force by John Doe #1, Napoleon is not alleged to have been personally involved with the use of force. Furthermore, any conclusory allegation that Napoleon instructed, condoned, or acquiesced in the conduct of John Doe #1, *see* Am. Compl. ¶ 10, is wholly unsupported. There are no allegations that Napoleon was present at the time of John Doe's alleged assault on Abreu or that he even knew about the actions of John Doe #1. The actions of John Doe #1, no matter how wrong, are insufficient as to Napoleon "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits." *Iqbal*, 556 U.S. at 676. The § 1983 claim was dismissed on April 4, 2023, because, *inter alia*, the Complaint improperly suggested respondeat superior liability. *See* Opn. 11 (explaining that "[t]his theory of liable is not applicable to § 1983 claims" (citing *Rode*, 845 F.2d at 1207 and *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018)). Nevertheless, the Amended Complaint again attempts to hold Napoleon vicariously liable for the actions of John Doe #1. *See* Am. Compl. ¶ 12 (alleging that "Napoleon acted . . . by and through his agent, servant, worker, employee and/or other representative, specifically Defendant, John Doe #1, to whom he is vicariously liable . . . "). Again, Napoleon is dismissed but this time dismissal is with prejudice.

Because all named defendants have been dismissed, the claim against John Doe #1 must also be dismissed. *See Hindes v. F.D.I.C.*, 137 F.3d 148, 155 (3d Cir. 1998) (explaining that "an

12
111323

action cannot be maintained solely against Doe defendants"). Having dismissed all claims and defendants, the motion to transfer venue of any surviving claims is moot.

## V. CONCLUSION

In a previous screening opinion, the excessive force claims were broadly construed as attempting to allege an Eighth Amendment violation and were dismissed without prejudice for failure to state a claim. The Amended Complaint also fails to state a claim because the allegations against Napoleon for placing Abreu in a restraint chair, without more, are insufficient to rise to the level of a constitutional violation and all other allegations fail to show his personal involvement. Napoleon is dismissed as is, necessarily, the sole remaining John Doe defendant. The Amended Complaint is dismissed with prejudice and the case is closed.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge